THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEANARD PAYNE, Defendant-Appellant.

First District (4th Division) No. 1—86—1435

Opinion filed February 1, 1990.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil Partee, State's Attorney, of Chicago (Inge Fryklund, Judy L. Groeneveld, and Sidney Z. Felischman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:
After a jury trial, defendant, Leanard Payne, was found guilty of residential burglary with intent to commit a felony therein (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) and sentenced to four years' imprisonment. He appeals from this judgment of the circuit court of Cook County. The following issues are raised on appeal: (1) whether the People proved that defendant was guilty of residential burglary beyond a reasonable doubt; (2) whether the trial court incorrectly instructed the jury on the mental state required in order to be convicted of residential burglary; and (3) whether the trial court improperly permitted the People to amend the charge immediately prior to trial.
We reverse.

Originally defendant was charged by information with residential burglary with intent to commit theft. Prior to trial and before jury selection, the People moved to amend the charge to residential burglary with intent to commit a felony. The trial court overruled his objection and granted the motion to amend.

At trial, Ernestine Jackson testified that shortly before midnight on March 3, 1985, she was sitting in the living room of her home, located at 139 South 11th Avenue, Maywood, Illinois, listening to the radio. The house had two front doors; one leading to an enclosed porch, and one, the main door, leading directly into the house. When she heard the outside door slam, she looked out of the window and saw a man, later identified as Leanard Payne, the defendant, throwing his body against the door. Ernestine called to the man, but he failed to respond. She ran to the kitchen and picked up a knife; however, she put it back. She could still hear the intruder pushing against the door. Thereafter, she ran upstairs to awaken her mother, Leona Jackson. Leona immediately attempted to telephone the police, but she had dialed the wrong number; upon her second attempt to call them, there was no dial tone. Ernestine stated that she then left the house through a bedroom window and ran six blocks to the police station.

Leona Jackson testified that she awakened her husband, Eugene Jackson, to tell him someone was trying to break into the house. Eugene loaded his gun and went to the top of the stairs. Defendant, after gaining entry, began screaming, "Daddy! Daddy!" Eugene told him he had the wrong house and that he was not his father. Eugene asked defendant to identify himself, but there was no response. The defense objected to this testimony on the basis that the contents of the oral statement by defendant had not been tendered to the defense through discovery. The objection was overruled. Eugene further testified that he told defendant to leave, but he continued to come up the stairwell. Eugene fired a warning shot and defendant disappeared.

When Ernestine returned home with a police officer, she noticed that the window on the door leading from the stairs to the porch was broken. She also noticed that the lock on the outside door was damaged and that the entire frame to the main door was hanging off its hinges. The jacket defendant wore was lying on the living room floor. Eugene went into the downstairs bathroom and found one shoe and a broken window.

Lieutenant Harold Jenkins testified that on March 4, 1985, at approximately midnight, he was called to a home located at 111 South 10th Avenue, in Maywood, which is directly across the alley from the

Jackson home. Officer Barnett met Jenkins at that location. Barnett and Jenkins observed defendant standing in the doorway, between the screen and frame doors. He was forcefully knocking at the door. He was not wearing a jacket, and one of his shoes was missing. Jenkins asked defendant why was he at the door, but there was no reply. He then ordered defendant to move away from the door. Again, defendant failed to respond in any manner. The resident of the house stated that she did not know the individual. Jenkins later established that the one shoe defendant was wearing matched the shoe found in the Jackson home.

After the People rested, defendant moved for a directed verdict, which was denied. Thereafter, the court held an instructions conference. The People tendered non-Illinois Pattern Jury Instructions (hereinafter IPI Criminal) for residential burglary. The court overruled defendant's objections to these instructions.

The jury found defendant guilty of residential burglary with intent to commit a felony therein. The court ordered a TASC (Treatment Alternatives to Street Crimes) evaluation to have defendant treated for drug addiction in lieu of sentencing. Defendant admitted his drug addiction and stated that he wanted help. However, the TASC representative found defendant ineligible for the program because defendant lacked recognition of the need for treatment. The trial court, therefore, found defendant ineligible for the program and sentenced him to four years' incarceration with a recommendation for psychiatric treatment.

Defendant's first contention on appeal is that the People failed to prove him guilty of residential burglary beyond a reasonable doubt. Defendant argues that the People failed to prove that he entered the house with a felonious intent.

■ Residential burglary is the knowingly unauthorized entry into the dwelling place of another with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a).) Felonious intent may be inferred from the defendant's words, actions, violence and any other conduct. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 492.) It is within the province of the trier of fact to consider all the facts and circumstances surrounding the offense in determining the question of intent. *Cabrera*, 116 Ill. 2d at 492.

> "[B]reaking and entering cannot be used to infer an intent to commit any other felony. If it could, the requirement of specific intent to commit that other felony would be meaningless. There would be no need to prove any specific intent at all, since all types of intent would be inferred from the unauthorized entry.

Intent is often, of course, inferred from circumstantial evidence. But that does not mean that there is no separate element of intent, or that we can indulge in the hopelessly circular reasoning that the entry must be accompanied by an intent which stands proven by the entry itself." *People v. Toolate* (1984), 101 Ill. 2d 301, 308.

■ The People argue that defendant's felonious intent was to either harm the Jackson family or to take Eugene's gun away from him. Initially we note that all instances of harm to another are not felonious. For example, battery, defined as causing bodily harm to another, is classified as a misdemeanor. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(b).) In order for a battery to constitute a felony, one or more of the following aggravating factors pertinent to the case at bar must be present: (1) the use of a deadly weapon; (2) the use of a disguise to conceal one's identity; or (3) the infliction of great bodily harm. Ill. Rev. Stat. 1985, ch. 38, par. 12—4.

■ The evidence fails to support the inference that defendant intended to commit aggravated battery. Defendant was not disguised nor did he have a weapon. There was no indication that he intended to inflict great bodily harm to any member of the Jackson family. As a matter of fact, defendant's conduct was quite bizarre, as noted by the trial court. The trial court believed, and defendant admitted, that he was a drug addict and was under the influence of drugs on the day in question. Thus, we do not find that defendant intended to commit an aggravated battery.

■ Unlike battery, robbery is a felony. (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(b).) Robbery is the taking of property from another by use of threat of force. (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a).) Again, we find no evidence to support the People's argument that defendant intended to commit a felony. As mentioned above, defendant was not armed with a weapon nor did he threaten the Jackson family with the use of force. The only act that defendant committed was to break and enter into the Jackson home without their authority. This act alone is not sufficient to infer an intent to commit a felony. *People v. Toolate* (1984), 101 Ill. 2d 301, 308.

Defendant next contends that the trial court incorrectly instructed the jury on the mental state required for a conviction of residential burglary with intent to commit a felony. He argues that the jury instructions failed to specifically define felonious conduct and erroneously included the intent to commit a theft as a permissible basis for conviction. The following jury instructions, taken from IPI Criminal 2d Nos. 4.04, 14.05, and 14.06 (Illinois Pattern Jury Instructions,

Criminal, Nos. 4.04, 14.05, 14.06 (2d ed. 1981)), pertaining to burglary were given:

"A person commits the offense of residential burglary when he knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft.

The word 'felony' means an offense punishable by death or by imprisonment in the penitentiary.

To sustain the charge of residential burglary, the State must prove the following propositions:

First: That the defendant knowingly entered the dwelling place of another; and

Second: That the defendant did so without authority; and

Third: That the defendant did so with the intent to commit therein a felony or theft.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Under IPI Criminal 2d No. 14.05 "burglary" is defined as follows: "A person commits the offense of residential burglary when he, without authority, knowingly *** (enters) *** [the dwelling place of another] with intent to commit therein the offense of _____." At the end of the instruction, the offense defendant allegedly intended to commit should be inserted. The following is stated in the Committee Note to IPI Criminal 2d No. 14.05:

"The insertion in the specific intent clause at the conclusion of the instruction should be taken from the information or indictment. It should be either 'theft,' if that is the specified objective of the burglary, or the particular felony specified in the indictment or information as the object of the burglary. If the objective of the burglary has been alleged generally as 'to commit a felony' or if alternative objectives have been alleged, the conclusion of the instruction may refer to alternative objectives of the burglary, as are supported by sufficient evidence to merit inclusion in an instruction." IPI Criminal 2d No. 14.05, Committee Note, at 311.

■ The issue instruction for burglary provides that the State must prove the following propositions: (1) the defendant knowingly entered the dwelling place of another; (2) the defendant did so without authority; and (3) the defendant did so with the intent to commit

the offense of _____. (IPI Criminal 2d No. 14.06.) The Committee Note to IPI Criminal 2d No. 14.06 refers to the Committee Note to IPI Criminal 2d No. 14.05 for the appropriate offense to insert at the conclusion of the instruction. It further "recommends that, at the request of either party, or *sua sponte*, the court define the offense (theft or the specified felony) alleged as the objective of the burglary." IPI Criminal 2d No. 14.06, Committee Note, at 312.

 The record reveals that contrary to the committee notes above, the jury instructions included the intent to commit theft as an alternative offense upon which to support a finding of guilt. Nevertheless, the intent to commit theft charge was not a factor of an objective stated in the amended charge against defendant. Furthermore, the People did not argue or present any evidence for this element. "The law is clear that the jury can be instructed only concerning the crime charged [citation]. The natural result of instructions based upon other crimes is prejudice to the defendant [citations]. It is reversible error to inject into the case, by way of instruction, issues which are not properly before the jury. [Citation.]" *People v. McCauley* (1972), 2 Ill. App. 3d 734, 736.

Moreover, the trial court failed to instruct the jury on what constitutes felonious conduct. As noted earlier, the jury was merely told that a felony is an offense punishable by death or imprisonment in the penitentiary. *People v. Palmer* (1980), 83 Ill. App. 3d 732, specifically addresses this issue. In *Palmer*, the defendant was charged with two counts of burglary with intent to commit therein a theft or felony. On appeal the burglary convictions were reversed and remanded due to improper jury instructions identical to those in the instant case.

Unlike the case at bar, in *Palmer* the court found the intent to commit theft was properly included in the instructions because the evidence showed that the defendant may have entered the dwelling to commit a theft. Nevertheless, noting that the Committee Note to IPI Criminal No. 14.06 requires the instruction to designate the crime defendant allegedly intended to commit, the court found that "the jury was neither informed as to what conduct would constitute any other offenses the defendant might have intended to commit nor whether those offenses carried a sufficient penalty to make them a felony." (*Palmer*, 83 Ill. App. 3d at 737.) The court made the following conclusion:

> "The argument in support of the instructions illustrates, however, the error in the form in which IPI No. 14.06 was given. The circumstantial evidence was fully sufficient for the jury to have inferred that the defendant intended to commit theft in-

side the apartment. *** But because of the defendant's rather bizarre conduct, the jury could have rejected that inference and concluded that he intended to commit conduct of the type described in his tendered instructions. Under the format of instructions as given, the jury was not advised as to whether an intention to commit that type of offense would constitute a burglary and could have erroneously concluded that it did. Thus, giving of IPI Criminal No. 14.06 without specifying and defining felonious conduct, the intention to commit which would have been a basis for burglary, was reversible error." *Palmer*, 83 Ill. App. 3d at 737.

■ Clearly, the case at bar is practically identical to *Palmer*. As mentioned above, defendant exhibited bizarre behavior while in the Jackson home. He repeatedly called Eugene "Daddy." He was not armed and did not threaten the family members with harm, either by word or gesture. After leaving the Jackson home, defendant went to another house directly across the alley from the Jacksons' residence and exhibited similar bizarre behavior. The police found him pounding on the door, wearing no jacket and with his left shoe missing. When confronted by the police officers, he was unresponsive. The jury could infer from this type of conduct that defendant was suffering from some mental delusion or was under the influence of drugs or alcohol. However, without knowing what constitutes felonious behavior, the jury was unable to determine whether defendant intended to commit a felony. Thus, the failure to define felonious conduct constitutes reversible error.

■ The People argue that defendant has waived his objection to the jury instructions because he failed to object at trial or in his posttrial motion. The People are correct that, as a general rule, errors in jury instructions are waived on appeal if not objected to at trial. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 222.) However, "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." 107 Ill. 2d R. 451(c).

According to Illinois law, the rule of waiver is modified in certain criminal cases based on the principles of a fair trial. (*Ogunsola*, 87 Ill. 2d at 222; *People v. Parks* (1976), 65 Ill. 2d 132, 137.)

"Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given. Instructions on the elements of the offense are among these basic instructions, and we have recognized that the trial court has responsibility for ensuring that they are given. [Citation.] The failure correctly to

inform the jury of the elements of the crime charged has been held to be error so grave and fundamental that the waiver rule should not apply." (*Ogunsola*, 87 Ill. 2d at 222.)

Since the alleged errors in the instructions concern the absence of one of the essential elements of the crime charged and affect the fundamental fairness of the trial, the waiver rule is inapplicable to the case at bar.

Defendant's final contention is that the trial court improperly permitted the People to amend the charge immediately prior to trial. Defendant argues that this impropriety denied him the opportunity to prepare a defense for trial. The State argues that defendant has waived this issue for review. It asserts that pursuant to *People v. Enoch* (1988), 122 Ill. 2d 176, in order to preserve an issue for review, both a trial objection and a written post-trial motion raising the issue are required. Defendant made an objection at trial to the amendment, but he did not raise the issue in his motion for a new trial.

■ "Although the general rule in Illinois is that failure by a defendant to object at trial or to raise an issue in the appellate court constitutes a waiver, it 'is well established that in the interest of justice, a reviewing court may consider *all* questions which appear to be plain error or affect substantial rights of a party.' (Emphasis added.)" (*People v. Martin* (1988), 119 Ill. 2d 453, 458, quoting *People v. Henderson* (1970), 119 Ill. App. 2d 403, 405; see also, 107 Ill. 2d R. 615.) *Enoch* recognized this exception. In its holding the court specifically stated that its decision does not overrule the waiver exceptions, plain error being one of the three exceptions. (*Enoch*, 122 Ill. 2d at 189-90.) The plain error doctrine is applicable "only when the question of guilt is close and the evidence in question might have significantly affected the outcome of the case [citations], or where the error alleged is so substantial as to reflect on the fairness or impartiality of the trial regardless of how closely balanced the evidence is [citations]." *People v. Sanders* (1983), 99 Ill. 2d 262, 273.

■ We find the second prong applicable to the present case. Formal defects in a charging document may be amended at any time if the change is not material or does not alter the nature and elements of the offense charged. (See Ill. Rev. Stat. 1985, ch. 38, pars. 111–3(3), 111–5; *People v. Troutt* (1977), 51 Ill. App. 3d 656, 661.) In the case at bar, the amendment changed the mental state of the offense. Not only is the mental state an essential element of residential burglary, but residential burglary with intent to commit a theft is a different offense than residential burglary with intent to commit a felony. (*People v. Toolate* (1984), 101 Ill. 2d 301, 308.) More importantly,

it was error to allow the People to amend the charge immediately prior to trial. Such error fails to apprise defendant of the precise offense charged, with sufficient time to prepare his defense. We find that the above reflects on the fairness and impartiality of the trial; therefore, the plain error exception to the waiver rule is applicable here. There is no need to reach the other contentions raised by defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

McMORROW, P.J., and LINN, J., concur.