THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN BROOKS, Defendant-Appellant.

First District (1st Division)   No. 1—90—3313

Opinion filed April 19, 1993.

Michael J. Pelletier and Todd Avery Shanker, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Carolyn A. Reynolds, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant John Brooks appeals his conviction and three-year sentence for aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(d)). Defendant raises the following errors on appeal:

(1) the court erred in admitting testimony which insinuated that he had previously engaged in sexually abusive misconduct; (2) the court erred in allowing the State to substantively amend the indictment on the day of trial; (3) section 12—16(d) of the Criminal Code of 1961 is unconstitutional as a violation of the equal protection clauses of the United States and Illinois Constitutions; (4) improper prosecutorial comments during closing argument denied him a fair trial; (5) the court erred in instructing the jury with the definitions of sexual conduct and aggravated criminal sexual abuse, which employ the word "victim" without an accompanying definition, thereby indicating the court's belief that the complaining witness was indeed a victim—a contested factual issue; and (6) defense counsel's many errors before and during trial denied him effective assistance of counsel. We affirm.

On September 1, 1988, a complaint for preliminary examination was filed against defendant charging a violation of section 12—16(d) of the Criminal Code of 1961. The complaint stated in relevant part:

"John A. Brooks has, on or about August 13, 1988, at 1 West Bartlett Road, Cook County, Illinois (Division of the Department of Children and Family Services), committed the offense of Aggravated Criminal Sexual Abuse in that he knowingly committed an act of Sexual Conduct with [M.W.], who was at least 13 years of age but under 17 years of age, in that the defendant fondled the breast and buttocks of [M.W.] and the defendant was least [sic] 5 years older than [M.W.]."

Defendant was then indicted by the September 1988 grand jury of the circuit court of Cook County for aggravated criminal sexual abuse. The returned indictment provided:

"[O]n or about August 1, 1988 and continuing on through August 31, 1988 at and within the County of Cook

JOHN BROOKS                    .

committed the offense of AGGRAVATED CRIMINAL SEXUAL ABUSE

in that HE, A PERSON AT LEAST 5 YEARS OLDER THAN [M.W.], COMMITTED AN ACT OF SEXUAL PENETRATION, UPON [M.W.], TO WIT: CONTACT BETWEEN JOHN A. BROOKS FONDLED [M.W.] BREASTS AND BUTTOCKS WITH HIS HAND AND [M.W.] WAS A PERSON AT LEAST 13 BUT UNDER 16 YEAR OF AGE: IN VIOLATION OF CHAPTER 38, SECTION 12—16(d) OF THE ILLINOIS REVISED STATUTES 1985, AS AMENDED."

On September 24, 1990, the day before trial commenced, the State asked leave of court to amend the grand jury indictment. The State first asked to change "sexual penetration" to "sexual conduct." In support, the State argued that the acts alleged within the indictment were actually those of sexual conduct, not sexual penetration. Furthermore, during the grand jury proceedings, Sergeant Paula Lemke, the only witness to testify, answered questions dealing with sexual conduct, not penetration, with the "conduct" in question concerning defendant's alleged fondling of M.W.'s breasts and buttocks. The term "penetration" was never mentioned during the proceeding. The State accordingly argued that the amendment would conform the returned indictment to the grand jury proceedings.

The State next asked to change "under 16 years of age" to "under 17 years of age." The State referred the court to the grand jury transcript wherein the State referred to M.W. as "approximately 16 years old." The State argued that a typographical error had occurred, resulting in "16" being typed rather than "17." Over defense objection that the State was seeking substantive amendments to the indictment, the court allowed the amendment.

At trial, M.W. testified that on August 19, 1988, she was a 16-year-old resident at Herrick House, a facility for children. M.W. had been removed from her mother's house after the mother stabbed M.W.

On the above date, most of the residents of Herrick House were on a field trip to the Illinois State Fair. M.W. did not go on the trip because she was recovering from a minor head injury.

At about 4 p.m. that day, M.W. went to the kitchen to get something to eat. M.W. saw defendant, whom she knew to be a counselor for the boys, in the hallway area near the kitchen door. No one else was present during the events which followed.

Defendant asked M.W. how her head was feeling, and she replied that she was doing fine. Defendant approached M.W. and put his hands inside her blouse, under her bra, and began to fondle her breasts. Defendant asked M.W. if she wanted to go home with him after work. M.W. declined defendant's invitation. Defendant then put his hands into the back of M.W.'s pants and began to fondle her buttocks. M.W. pushed defendant away and returned to her room.

M.W. did not immediately tell anyone about the incident because she felt that no one would believe her. A week after the incident, she told Denise Cox, a Herrick House counselor. She next told Tanya Robertson, a friend of hers at the Herrick House. M.W. was taken to the police station a few weeks after the incident.

Bruce Hirsch testified for the State that in 1988 he was the director of the Herrick House Youth Center in Bartlett, Illinois. The center houses abused or neglected children who are wards of the State. As director, Hirsch hired defendant as a child care worker. Defendant worked a 3 to 11 p.m. shift on August 19, 1988. Hirsch terminated defendant on October 24, 1988. An arbitration hearing was subsequently held regarding defendant's termination. These proceedings resulted in defendant resigning his position, receiving no back pay, and defendant agreeing to never work for the State again.

Hirsch first learned about M.W.'s allegations when the Bartlett police began their investigation. M.W. first talked with Hirsch about the assault on the day of trial.

Defendant testified on his own behalf, stating that he began at the Herrick House in March 1987. Defendant served as a child care service worker, attending the everyday needs of the children.

On August 19, 1988, defendant arrived to work at about 2:30 p.m. Many of the facilities' residents were attending the State Fair; however, some were left behind, including three to four boys for disciplinary reasons and one female. Defendant did not see M.W. that day, and defendant was only at the facility's kitchen one time, at about 5 p.m., when he obtained the four boys' dinner. After the boys ate, defendant accompanied them back to the dorm area. Defendant first became aware of the allegations against him on September 1, 1988. Defendant denied ever touching M.W. on August 19, 1988.

Following argument, the jury convicted defendant of aggravated criminal sexual abuse. The court subsequently sentenced defendant to three years' imprisonment. This appeal followed.

Defendant first contends on appeal that the court erred in admitting "irrelevant and inflammatory" testimony which insinuated that defendant "was a person of bad character" who "had previously engaged in sexually abuse misconduct at his workplace." Defendant's allegation of error arose from the following cross-examination of State witness Bruce Hirsch:

"Q. Were any complaints made to you that night [August 19, 1988] by anybody regarding M.W.

A. No, sir.

Q. When was the first time that you heard any complaints about M.W. and her allegations against [defendant].

A. I believe I first heard mention about complaints about [defendant] and some of the residents —

Q. I'm just asking about [M.W.], nobody else. What was the first time you heard anything about M.W. and [defendant].

A. When the Bartlett Police were investigating.

\* \* \*

Q. *Did a Miss Carole Hines ever come to you—strike that. Were you ever told by any counselors at the Herrick House about this allegation against [defendant] involving M.W.?*

A. *Yes, sir.*

Q. *Who told you?*

A. *One of the social workers, Miss Vivian Lund, told me about allegations that she had heard against [defendant] from residents of Herrick House.*

MR. WILLIS [Defense attorney]: I will ask that be stricken from the record. I ask this witness be admonished to deal with the specific questions I'm asking him.

MR. SPECTOR [Assistant State's Attorney]: I think he is trying to answer that.

THE COURT: Read the question and the answer back.

(record read back.)

THE COURT: Overruled.

Q. When did she tell you?

THE COURT: The answer is responsive.

Q. When did she tell you?

A. In August of 1988. I don't recall the exact date.

Q. On that date in August of 1988, she told you about [M.W.] having made allegations against Mr. Brooks, is that correct?

A. Yes." (Emphasis added.)

Following the above passage, defense counsel continued along this line of questioning, asking seven other questions concerning how the witness came to know about M.W.'s "allegations" against defendant.

Apart from Hirsch's cross-examination, defendant directs this court to the State's closing argument, wherein defendant alleges the State continued the improper character assassination, by alleging defendant was a repeat offender:

"He (defendant) picks the right kind of a victim, you know, troubled *children*, from broken homes, who have been abused and used to being taken advantage of, who may submit willingly, but even if *they* don't, would be afraid to tell anybody anyway. He knows what his *victims* are like." (Emphasis added.)

Finally, defendant directs this court to the reading of defendant's indictment to the jury following closing argument. The court there stated that: "The indictment states that the offense charged was com-

mitted on or about August 1, 1988 and continuing through August 31, 1988."

Relying on a long line of cases which assert that it is reversible error to admit irrelevant other crimes evidence (*e.g., People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238), defendant asserts that reversal is required in this case because other crimes evidence was improperly interjected on numerous occasions during trial. We disagree.

Initially, the State correctly states that defendant failed to include any of the alleged errors within his post-trial motion. Defendant has accordingly waived review of the issue. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) However, under the plain error doctrine, a reviewing court may reach the merits of an issue not properly preserved where the case is closely balanced or the alleged error is so fundamental and of such magnitude that the accused was denied a fair trial. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209-10, 561 N.E.2d 1.) Here, despite the State's contention to the contrary, the evidence in this case was closely balanced. In short, guilt or innocence turned on whether the jury believed defendant or M.W. Given this posture, we will reach the merits of defendant's argument. Additionally, given defendant's final contention on appeal—that defense counsel's repeated failure to preserve error on review denied him effective assistance of counsel—we need to assess alleged errors to determine if defendant was indeed denied effective assistance of counsel.

■ On the merits, defendant's arguments are unpersuasive. Regarding Hirsch's cross-examination, the record simply does not reflect an interjection of other crimes evidence. M.W. testified that she told two residents about the incident. Hirsch could properly respond to defense counsel's questioning that more than one person had told him about M.W.'s "allegations" against defendant. In everyday usage of the English language, the word "allegations" is frequently employed to describe the occurrence of one act of misconduct committed by an accused. Indeed, defense counsel liberally used the word himself during his cross-examination of Hirsch. We find that no error occurred.

Turning to the State's rebuttal argument, we agree with the State that defendant has taken the complained-of remarks out of context. The argument as heard by the jury was as follows:

"Let me talk about corroboration. Mr. Willis [defense counsel] says, 'corroboration, where is it?' Well, when this occurred, it was a crime of opportunity. The opportunity was there. He took advantage of it. If there had been witnesses, people around to

see what he was doing, would he have done it? He is not a dumb man. Of course, he wouldn't. Crimes like this don't happen—you don't invite an audience to witness it. You don't do it when there is a chance you may get caught. Who would be that stupid? Well, maybe there are people that stupid, but Mr. Brooks isn't. He's familiar with that home. He knows the routine. He knows where everybody is. He knows there's a State Fair, and nobody is around, and he's thinking he might get something, and she's there for it. He picks the right kind of a victim, you know, troubled children, from broken homes, who have been abused and used to being taken advantage of, who may submit willingly, but even if they don't, would be afraid to tell anybody anyway. He knows what his victims are like."

The above quotation *in full* demonstrates the reason for the rule that statements in closing argument must be viewed in the context wherein made. Further, in assessing the propriety of an argument, we are not obligated to assume that the jury accepted a comment's most damaging interpretation:

"Such arguments, like all closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *People v. Phillips* (1989), 127 Ill. 2d 499, 529, 538 N.E.2d 500, *cert. denied.* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.

Here, our reading of the State's argument leads us to conclude that the State was not attempting to portray defendant as a repeat child molester. The evidence showed that defendant and M.W. were together at a time when most residents were gone. The thrust of the State's argument was that defendant was an opportunist, taking advantage of an individual like M.W. when no one else was around. While it would have been preferable for the State to use singular nouns, its use of plural nouns within the context of the quoted argument did not amount to the interjection of other crimes evidence into this case.

Turning to the circuit court's reading of defendant's indictment to the jury following closing argument, no error occurred. In the para-

graph preceding the court's reading of the indictment, conveniently omitted by defendant, the court stated: "If you find the offense charged was committed, the State is not required to prove that it was committed on a particular day charged." The jury was additionally instructed shortly thereafter that the indictment was not evidence and did not create any inference of guilt. Defendant's claim of error is without merit.

Defendant next contends that the circuit court erred in allowing the State to amend on the day of trial its indictment against defendant. Defendant asserts that the amendments were substantive changes, not merely formal. We find the amendments to be formal.

The State correctly notes that defendant has waived review of this issue by failing to raise the issue in his post-trial motion. However, as previously, we reach the merits of the issue under the plain error doctrine. Accord *People v. Payne* (1990), 194 Ill. App. 3d 238, 550 N.E.2d 1214 (plain error doctrine invoked to address the merits of a similar argument).

Section 111—5 of the Code of Criminal Procedure of 1963 governs amendments to indictments. Indictments may be amended at any time "because of formal defects, including: (a) Any miswriting, misspelling or grammatical error; [or] \*\*\* (d) The presence of any unnecessary allegation." Ill. Rev. Stat. 1987, ch. 38, par. 111—5.

Defendant was charged under section 12—16(d) of the Criminal Code. The 1985 version of this section provided:

> "(d) The accused commits aggravated criminal sexual abuse if he or she commits an act of *sexual penetration* with a victim who was at least 13 years of age but *under 16 years of age* and the accused was at least 5 years older than the victim." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(d).)

The section was later amended, effective January 1, 1988, adding sexual conduct to the types of impermissible acts and changing the relevant age bracket of the victim:

> "(d) The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual penetration *or sexual conduct* with a victim who was at least 13 years of age but under *17* years of age and the accused was at least 5 years older than the victim." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 12—16(d).

The statutory amendment made relatively minor changes. However, in this day and age of computer forms and busy criminal dockets, the State official responsible for charging defendant failed to correct the grand jury indictment form charging a violation of section

12—16(d) *as amended*. Upon our review of the returned indictment contained in the record, it becomes clear that a simple mistake was made: When the statute was amended, the computer form in question was not. The form still employed the term "sexual penetration," which was, prior to the amendment, the only impermissible act under section 12—16(d), and the outer age bracket of the victim, now 17, remained 16 years old. When defendant's indictment came to be printed, "sexual penetration" should have been changed to "sexual conduct" and "16" changed to "17." This did not occur. The resulting indictment, as again the record makes clear, had loose remnants of the old statute, even though it was predicated on the amended version of section 12—16(d).

Defendant asserts in this case that he was charged under the prior version of section 12—16(d) yet convicted under the amended version. This is false.

■■ First, section 12—16(d) in its prior form ceased to exist as of the effective date of the amendment, January 1, 1988. The assault in question occurred August 18, 1988. Charging defendant with sexual conduct before the amendment was a legal impossibility because a defendant could not be so charged; only sexual penetration could be charged.

Second, the history of the charges against defendant reflects the State's intent to charge defendant under the amended version of section 12—16(d). Both the preliminary complaint and the indictment were predicated on sexual conduct involving fondling, not penetration. The first time the word "penetration" ever occurred was when the indictment in question was returned. During the entire grand jury proceeding, a transcript of which is contained in the record, the State and its witnesses spoke of fondling, not penetration. Indeed, at the end of the proceeding, the State asked "for a true bill against John Brooks for the offense of aggravated criminal sexual abuse that being that he fondled the breast and buttocks and she is approximately 16 years old." The grand jury returned from its deliberations with a "true bill." Apparently, when the foreperson was given the indictment to sign, he was given a defective one. He signed it without reading it. The State must have tendered it without reading it, too.

Section 111—5 permits this court to allow an amendment to cure a "miswriting" or "the presence of any unnecessary allegation." Based on the foregoing analysis, we find that the amendment here cured a miswriting—a formal defect. Thus, contrary to defendant's argument, this is not a case where the amendment *changed* the offense with which the defendant was charged. Aggravated criminal sexual

abuse under section 12—16(d) has always been the charged offense, both before and after the amendment. *People v. Betts* (1979), 78 Ill. App. 3d 200, 397 N.E.2d 106, upon which defendant relies to support his argument, is thus distinguishable, as it involved an amendment which changed the statutory subsection under which the defendant was initially charged.

Nor is the amendment here similar to that occurring in *People v. Payne* (1990), 194 Ill. App. 3d 238, 550 N.E.2d 1214, another case upon which defendant relies, where the accompanying mental state to burglary was amended from intent to commit theft to intent to commit a felony. *Payne* was clearly a change in the underlying charge which, again, did not occur here.

Finally, defendant's complaint of prejudice is not persuasive. Section 111—5 permits amendments "at any time" where the conditions for such an amendment are met. Here, defendant's principal defense at trial was that the assault never occurred. He so responded in his answer to the State's interrogatories and so testified at trial. Thus, his principal defense could not have been affected by the amendment. The only defenses defendant lost as a result of the amendment were two technical ones which he never should have had in the first place. Defense counsel did not even raise the issue of prejudice when the State sought to amend the indictment. For these reasons, we find that the circuit court properly allowed the State to amend the indictment.

Defendant next asserts that section 12—16(d) of the Criminal Code violates the equal protection clauses of the United States and Illinois Constitutions. Defendant claims that section 12—16(d) and section 12—15(c) permit similarly situated defendants to be treated differently. This latter section provides:

> "(c) The accused commits criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was less than 5 years older than the victim." Ill. Rev. Stat. 1987, ch. 38, par. 12—15(c).

In *People v. Reed* (1992), 148 Ill. 2d 1, 10, 591 N.E.2d 455, the Illinois Supreme Court rejected defendant's exact argument. There, the court concluded that persons violating section 12—16(d) can justifiably be held more accountable than persons violating section 12—15(c) because the victim under section 12—16(d) is more exploitable than the victim under section 12—15(c). The court found the statutory differences to be supported by a rational basis. *Reed* is dispositive.

Defendant next argues that numerous statements during the State's final argument denied him a fair trial. Initially, we find that defendant has waived review of any alleged comment. Defendant failed to make a contemporaneous objection and did not raise the matter in his post-trial motion. For the previously stated reasons, however, we will reach the merits of defendant's argument.

We are first directed to the prosecutor's argument that defendant could not recall the names of the four boys who were left behind from the fair for disciplinary reasons. Defendant testified that he watched these boys all day. Defendant asserts that no evidence existed that he could not remember their names.

At trial, the State asked defendant during cross-examination: "Now, these four disciplinary individuals, *who reviewed discipline,* do you remember their names?" (Emphasis added.) Defendant responded that he did not remember. The comments in question were apparently predicated upon this question and answer.

A prosecutor is given great latitude during closing argument, and the propriety of his comments is within the trial court's discretion. (*E.g., People v. Morrison* (1985), 137 Ill. App. 3d 171, 484 N.E.2d 329.) The prosecution may base its argument on the evidence presented or reasonable inferences therefrom, respond to those comments by defense counsel which invite or provoke a response, denounce the activities of defendant and urge that justice be administered. (*Morrison,* 137 Ill. App. 3d 171, 484 N.E.2d 329.) In order for a prosecutor's remarks to constitute grounds for reversal, they must be of substantial magnitude when viewed in the context of the entire record. *People v. Scott* (1990), 194 Ill. App. 3d 634, 645, 551 N.E.2d 288, *appeal denied* (1990), 132 Ill. 2d 552, 555 N.E.2d 383.

Here, the State could properly argue to the jury that defendant could not provide the names of the four boys whom he watched on the day in question. No testimony existed that four individuals "reviewed discipline." The only subject matter that came in "fours" during the entire trial was the four boys in question. The State's question was designed to ask about those boys and not some other subject matter. We find that no error occurred or, alternatively, any error insufficiently prejudicial, as defendant's lack of recollection was a minor point at trial, and the jury was subsequently instructed that closing arguments were not evidence and to disregard arguments not based on the evidence.

Defendant next directs this court to comments which he claims amounted to an improper shifting of the burden of proof. Defendant

directs this court to two sets of such comments, with the first occurring during the following passage:

"Now, you heard from Mr. Hirsch. Mr. Hirsch told you of the nature in which Herrick House runs, that those persons did, on the date of August 19th, go to the State Fair. Mr. Hirsch has testified. He is credible. What reason would Mr. Hirsch have to lie? What reason would [M.W.] have to lie? None. What reason would John Brooks have? Many. *You must remember he is the person on trial here; they are not. [M.W.] and Mr. Hirsch are not on trial. They need not establish why they did things the way they did them.*

It's our burden to prove, beyond a reasonable doubt, the [*sic*] John Brooks committed an offense, and the State has done that with the two witnesses you have seen here today." (Emphasis added.)

"There is a great deal of difference between an allegation by the prosecution that defendant did not prove himself innocent and statements questioning the relevance or credibility of a defendant's case. [Citations.] Not every prosecutorial statement questioning relevance or credibility rises to an impermissible shifting of the burden." *People v. Phillips* (1989), 127 Ill. 2d 499, 527, 538 N.E.2d 500, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.

We believe that the prosecutor's comments did not rise to the level of impermissible burden shifting; rather, the comments addressed the credibility of the witnesses. Thus, no error occurred; alternatively, any error was minimal. The prosecutor informed the jury that the State had the burden of proof within the very same passage. Other instructions given to the jury informed it of defendant's presumption of innocence, the State's burden of proof and that closing arguments were not evidence. In light of the entire record, the complained-of comments could not have been a material factor in defendant's conviction.

The second set of alleged improper burden of proof comments occurred during the following discourse:

"The defense said we didn't call a witness to the stand, Denise Cox. What was she going to say? What [M.W.] said. That, I would submit to you, Ladies and Gentlemen, could never be presented in front of you because its hearsay, and furthermore, I submit counsel knows that. I have something to tell you. It works two ways. How do you get witnesses in court? You give them a subpoena, and they have to come to court, and he has the same power to subpoena any of those witnesses, and

if for one moment, he thought any of them would say anything different, that any of them would say [M.W.] never told us that, that any of them would say [M.W.] never spoke to us or [M.W.] never said that happened, he would have subpoenaed them himself and brought them in front of you. This case doesn't rest on what she said to anybody or not. It certainly would make a difference if she said something different happened to those people, and I would be the first to say that. This case rests on simply one thing, her word, her believability when she said what happened to her.

\* \* \*

Ask yourself, every one of you, this question—talking about the subpoena power as to witnesses he could have brought you, where was Jesse Bellford, the guy who drove him to work that day who could say he came in at 2:00 o'clock.''

Defendant's burden of proof argument is again without merit. Defendant cannot complain of remarks which his own closing argument invited. (*People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172, *cert. denied* (1989), 493 U.S 873, 107 L. Ed. 2d 156, 110 S. Ct. 203.) In his closing remarks, defendant argued that M.W.'s telling of others about defendant's assault was not corroborated by the in-court testimony of those so told. Defense counsel argued: "Not one police officer, not one State's Attorney, not one official involved in law enforcement on any level appeared in this courtroom to tell you that they were told by [M.W.] that this incident occurred." Counsel continued to argue that the State had the burden of proof and had not brought in even "one iota of corroborative evidence to support it, nothing, not one thing." We believe that the State could respond that defendant had as much capability as the State, although not the obligation, to subpoena witnesses. See *People v. Richardson* (1988), 123 Ill. 2d 322, 354-55, 528 N.E.2d 612, *cert. denied* (1989), 489 U.S. 1100, 103 L. Ed. 2d 943, 109 S. Ct. 1578 (State could respond to defendant's similar argument that witnesses were equally available).

Defendant next contends that the trial court erred in instructing the jury with the definitions of aggravated criminal sexual abuse and sexual conduct (see Illinois Pattern Jury Instructions, Criminal, Nos. 11.61(d), 11.65D (3d ed. 1992)), which employ the term "victim" without an accompanying definition, thereby demonstrating the court's belief that M.W. was in fact a "victim," a debated issue the State was required to prove. We disagree.

Initially, defendant has waived review of this issue by failing to tender an alternative instruction or raising the matter in his post-trial

motion. As previously, however, we reach the merits of the issue, which we reject.

■ Defendant omits from his argument the fact that the Illinois Pattern Jury Instruction which defines the term "victim" was given to the jury in this case. (See Illinois Pattern Jury Instructions, Criminal, No. 11.65F (3d ed. 1992).) Any argument, therefore, that the jury received a "loaded" charge is without merit. Illinois has long held that jury instructions are not to be considered in isolation, but the entire charge to the jury must be viewed. (*People v. Matthews* (1984), 126 Ill. App. 3d 710, 467 N.E.2d 996.) Here, the jury was properly instructed.

Defendant finally complains that he was denied effective assistance of counsel because of counsel's failures to preserve numerous issue for review. We disagree.

An ineffective assistance of counsel claim may be rejected on the ground that counsel's ineffectiveness did not prejudice defendant. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Merely showing that counsel erred is insufficient.

■ Here, under the plain error exception to the waiver rule, each of defendant's claimed errors has been addressed on the merits. After analysis, we found each to be either without merit or insufficiently prejudicial to warrant reversal. Accordingly, counsel's failure to properly preserve them for review in this case was inconsequential. Defendant's *Strickland* argument thus fails.

For the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.