THIRD DIVISION
October 28, 2009

No. 1-06-0792

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04 CR 28351 |
| | ) | |
| KELLY ROSS, | ) | |
| | ) | Honorable Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding |

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

After a bench trial, defendant, Kelly Ross, was convicted of criminal sexual assault and sentenced to life imprisonment. On appeal, he contends that (1) an amendment to the indictment was untimely and improper, (2) evidence of a 17-year-old sexual assault was inadmissible, (3) his mother-in-law's testimony that he was "in over his head" and needed "car fare" was irrelevant and prejudicial, (4) foundation was lacking for a cell phone message that defendant was "in trouble," and (5) his sentence was improper for a number of reasons.

## I. BACKGROUND

### A. Amendment to the Indictment

The record reveals that the grand jury returned a two-count indictment against defendant. Count I alleged that on January 8, 2004, defendant "knowingly committed an act of sexual penetration on [G.W.], to wit: contact between Kelly Ross' penis and [G.W.'s] anus, by the use

of force or threat of force." Count II alleged that defendant "knowingly committed an act of sexual penetration on [G.W.], to wit: contact between Kelly Ross' penis and [G.W.'s] mouth, by the use of force or threat of force."

On December 20, 2005, after the victim, C.C., testified at trial, the State made an oral motion to amend the indictment to substitute the name C.C. for G.W.[1] as the victim. The State further sought to amend count I to allege penis-to-vagina contact instead of penis-to-anus contact in order to conform "with intentions of the grand jury transcript which stated, did you learn that the defendant committed an act of sexual penetration or conduct with the victim when he placed his penis in [C.C.'s] vagina by force." Third, the State sought to amend count II from penis-to-mouth contact to mouth-to-vagina contact, which would also conform with the intention of the grand jury.

The trial court noted that "maybe they should have done it before. *** Well, they got the names of the people mixed up when they returned the indictment. I don't know why somebody didn't look at this stuff before. It's rather embarrassing to say the least." The trial court noted to defense counsel that the State "said [the] grand jury transcript actually supports what they're trying to do. You must have read the grand jury transcript." Defense counsel did not dispute that the amendment conformed with the intentions of the grand jury. The court found the State's

---

[1] The State's motion to admit other-crimes evidence argued that defendant sexually assaulted G.W. in July 1999. The State ultimately did not present any evidence at trial as to that crime. At the time of trial, 04 CR 28352, the case involving G.W., was also pending. Since the trial in the instant matter, defendant was convicted of criminal sexual assault of G.W. and sentenced as a Class X offender to life imprisonment. See *People v. Ross*, No. 1-06-3654 (2008) (unpublished order under Supreme Court Rule 23), *appeal denied*, 229 Ill. 2d 688 (2008).

actions "sloppy" but allowed the amendment over defendant's objections "because I believe I am required to by the law."

## B. The State's Case

C.C. testified that on January 7, 2004, she spent the night at her boyfriend's, William Ross's, house. William's two brothers, Thomas and defendant, were staying there, as were three of William's children. C.C. slept with William in his upstairs bedroom.

C.C. testified that when she went to bed on January 7, she was wearing a shirt, pajama pants, and underwear. When she woke up on January 8, she was lying on her stomach wearing only a shirt. She felt someone's elbow "and a whole bunch of weight" on the top of her back, but she could not tell at that point if it was a man or a woman. She tried to get up, but the person held her down. The person opened her legs and penetrated her vagina with his penis. While his penis was inside her vagina, she was unsuccessfully "wrestling, moving, trying to get up off the bed."

The man took his penis out of her vagina but still held her down. C.C. was able to turn her head toward the doorway and became more frightened to discover that the door was open; when she was with William, the door was always closed.

The man then flipped her over onto her back and kissed her face, neck, and breast and worked his way down to her vagina. She was still trying to get up and saying, "Stop, no." He kissed, licked, and played with her vagina, then he put his penis back into her vagina for 10 to 20 minutes. He "got done," got off the bed, and turned on the light. When C.C. put on her glasses, she discovered that the person was defendant. Defendant told C.C. not to tell William and asked

if it would be better if he found another place to live. He then left the room.

C.C. remained in the room, where she cried and yelled for someone to help her. Ten or fifteen minutes later, William arrived home and found her on the floor. He picked her up off the floor and asked her what happened. She responded, "Kelly raped me." William took her downstairs and called an ambulance.

While the hospital records indicated that C.C. reported that her boyfriend's brother tried to rape her, she testified that she told that staff that her boyfriend's brother actually raped her. Defendant's DNA was found in C.C.'s vagina.

On cross-examination, C.C. testified that she was not sure whether defendant penetrated her vagina. She also told the hospital staff that she was unsure whether there had been penetration of her vagina or anus. On redirect, C.C. clarified that penetration means "when a man come" and when a penis is placed inside a vagina. Therefore, when the hospital asked if defendant penetrated C.C.'s vagina with his penis, she thought the question referred to whether he ejaculated and "did he force it in." On re-cross, she testified that she told the hospital that he entered her vagina with his penis but she was not sure whether he ejaculated inside.

William Ross testified that defendant slept on his couch in January 2004. C.C. slept at his house occasionally; during those times, they kept his bedroom door closed. On January 9, 2004, just before 8 a.m., he was preparing to take his son to school when he saw defendant sitting on the floor of the living room, drinking a beer and looking at a picture of himself and his wife. Defendant, who appeared sad, said that he lost a good woman. When William left to take his son to school, C.C. was sleeping in the upstairs bedroom and William's oldest brother, Thomas, was

sleeping in the basement. William dropped his son off and stopped at the grocery store, but it was closed, so he returned home. He was gone 30 to 35 minutes.

When William returned home, defendant was no longer in the living room. When he went to the computer room, he heard whimpering sounds coming from upstairs, so he went upstairs and found C.C. balled up on the floor, crying. She was only wearing a shirt, with no bottoms. William asked her five or six times what was wrong, and she eventually said defendant's name. William helped her put on a pair of his pajama pants, carried her downstairs, and called 911. He was unable to converse with her because she was "crying, kind of fidgety, just not all there."

Renee Latham, defendant's cousin, testified that on January 10, 2004, the police came to her house and asked to listen to a message that defendant had left on her cell phone. She called her voice mail and played the message for the police. She had last spoken to defendant on a house phone on New Year's Eve.

Iola Buggs, defendant's mother-in-law, testified that defendant came to her house on January 8, 2004, shortly after 8:30 a.m. Defendant told her he was over his head, but she did not respond because she did not want to get involved. Later he asked whether she had car fare. When she said no, he left. She did not see him again after that.

On January 8, 2004, Chicago police detective Glenn Turner, who was assigned C.C.'s case, went to the house where defendant's wife and mother-in-law lived. There, Turner found the picture that defendant was holding earlier. He also went to Latham's house on January 8 and 10. The second time he was there, Latham told him that defendant had left a message on her cell phone. In the message, defendant stated that he heard he was in trouble and he needed help.

Defendant was arrested on November 9, 2004, after he was found hiding in the closet of an apartment.

Defendant was also charged with and convicted of criminal sexual assault in case number 87 CR 14082. Over defendant's objection, the State admitted a transcript of testimony given on July 1, 1988, for that case. S.H. testified that on September 22, 1987, she was living at 6154 South King Drive with her boyfriend and children. Around 5 p.m., defendant, who was S.H.'s boyfriend's sister's boyfriend, knocked on her apartment door and told her he had something for her boyfriend. She responded that her boyfriend was not home and then permitted him to use her bathroom.

Defendant called S.H. to the bathroom, saying that the toilet would not flush, so she went to the bathroom to fix the toilet. She got the toilet to flush, and when she turned around, defendant grabbed her by the neck and threw her down onto the floor, causing her to hit her head on the bathtub. Defendant took a carpet cutter out of his pocket and forced her to disrobe. He demonstrated how sharp the carpet cutter was by putting an X on her forehead and scratching her neck and shoulder. He then put his penis into her mouth, licked her vagina, and put his penis in her vagina. S.H. persuaded defendant to stop by telling him that she needed to take care of one of her children, who was crying and banging on the door.

Defendant forced S.H. and her children to his car by putting the carpet cutter to the two-year-old's throat and threatening to kill him. With two other men in the car, defendant drove S.H. and her children to his house. En route, defendant dropped off the two men and encountered his girlfriend, whom he instructed to go to her mother's house and wait for his call. When they

arrived at defendant's house, he took them to his bedroom and forced S.H. to disrobe. He put his penis into her vagina and attempted to put it in her anus, but she feigned a medical condition. He told her he was going to keep her there for a week but ended up driving her two blocks from her home.

### C. Defendant's Case

Medical records from St. Bernard Hospital indicated that C.C. assessed her pain at 6 on a scale of 0 to 10. She also stated, "My boyfriend's brother tried to rape me." The emergency department record that the hospital staff filled out gave four options with respect to penetration: vaginal, rectal, oral, or uncertain. "Uncertain" was circled. As for whether ejaculation occurred "inside body orifice," the four options were yes, no, touched, and unsure. "Unsure" was checked. A chart as to "penetration of female sex organ" specified the options of penis, finger, and foreign object, and yes, no, touched, and unsure. By "penis," there is an initial check mark under "yes," but it was scribbled out and "unsure" was checked instead.

The parties stipulated that Detectives Dion Redfield, Samuel Brown, and Joyce Jones took a statement from C.C. in November 2004 that she felt someone climb on her back and open her legs, but she thought it was her boyfriend and did not resist.

### D. Trial Court's Finding

The trial court acknowledged that the evidence from St. Bernard Hospital "is concededly in conflict" with C.C.'s testimony. The court noted, however, that C.C. denied telling hospital personnel that she was uncertain of any penetration. Furthermore, the results of the rape kit reflected a positive DNA match for defendant. Accordingly, the court found defendant guilty of

1-06-0792

both counts of criminal sexual assault and sentenced to a term of natural life imprisonment pursuant to section 12-13(b)(3) of the Criminal Code of 1961 (720 ILCS 5/12-13(b)(3) (West 2006)). This appeal followed.

## II. ANALYSIS

### A. Amendment to the Indictment

Section 111-3 of the Code of Criminal Procedure of 1963 provides that a charge shall be in writing and allege the commission of an offense by:

"(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitively as can be done;

and

(5) Stating the name of the accused, if known." 725 ILCS 5/111-3 (West 2006).

An indictment must be signed by the foreman of the grand jury. 725 ILCS 5/111-3 (West 2006).

Once an indictment has been returned by the grand jury, it may not be broadened through amendment except by the grand jury itself. *People v. Benitez*, 169 Ill. 2d 245, 254 (1996); *People v. Nathan*, 282 Ill. App. 3d 608, 610 (1996). See Ill. Const. 1970, art. I, §7 ("No person shall be held to answer for a criminal offense unless on indictment of a grand jury ***."). The reason for this rule is to ensure that citizens' rights are not at the mercy or control of a prosecutor. *Benitez*, 169 Ill. 2d at 254. However, an indictment may "be amended on motion by the State's Attorney

-8-

or defendant at any time because of formal defects," including "[a]ny miswriting, misspelling, or grammatical error," the "presence of any unnecessary allegation," or the use of "alternative or disjunctive allegations as to the acts, means, intents or results charged." 725 ILCS 5/111-5 (West 2006). Formal amendment is warranted especially where there is no resulting surprise or prejudice to the defendant or where the record clearly shows that he was otherwise aware of the charge against him. *People v. Flores*, 250 Ill. App. 3d 399, 401 (1993).

Formal defects are distinguished from substantive changes that alter the nature and elements of the offense charged. *Flores*, 250 Ill. App. 3d at 401. In *People v. Milton*, 309 Ill. App. 3d 863, 866 (1999), this court held that "an amendment is substantive and therefore improper if (1) it materially alters the charge, and (2) it cannot be determined whether the grand jury intended the alteration." A trial court's decision to allow an amendment to the charging instrument will not be disturbed unless the court abused its discretion. *People v. Alston*, 302 Ill. App. 3d 207, 211 (1999).

Defendant argues that the amendments from G.W. to C.C., from penis-to-anus contact to penis-to-vagina contact, and from penis-to-mouth contact to mouth-to-vagina contact were substantive, untimely alterations to the nature of the offenses charged. The State responds that the amendments simply corrected a miswriting and did not alter the charge, broaden the scope, or add an alternative to the mental state.

This court has held that an error in the citation of a statute giving rise to a charge is a mere technical defect that is subject to amendment. See *People v. Hirsch*, 221 Ill. App. 3d 772, 777 (1991); *People v. Hewitt*, 212 Ill. App. 3d 496 (1991); *People v. House*, 202 Ill. App. 3d 893

(1986). In *People v. Brooks*, 246 Ill. App. 3d 777 (1993), the indictment alleged that the defendant committed an act of sexual penetration on the victim, who was under 16 years of age. The day before the trial started, the trial court permitted the State to amend the indictment from "sexual penetration" to "sexual conduct" and from "under 16 years of age" to "under 17 years of age." On appeal, this court found that the amendment was formal because the forms used by the official responsible for charging the defendant were not updated to reflect an amendment in the aggravated criminal sexual abuse statute. *Brooks*, 246 Ill. App. 3d at 786.

It is also permissible to revise the indictment when the victim of a crime has been misidentified. *People v. Jones*, 53 Ill. 2d 460, 464 (1973); *People v. Cooper*, 97 Ill. App. 3d 222, 225 (1981). *Jones* noted that there has been a trend away from the formalism that characterized criminal pleading in the past. *Jones*, 53 Ill. 2d at 464. "The liberalization of criminal pleading also reflects a lessening of importance of the indictment's secondary functions. The indictment as a means of informing defendants of particulars concerning the case is now far overshadowed by the array of discovery procedures available to the defense." *Jones*, 53 Ill. 2d at 464.

Courts have found reversible error where the amendment alters the nature and elements of the offense charged. *Flores*, 250 Ill. App. 3d at 401. For example, in *People v. Zajac*, 244 Ill. App. 3d 42 (1991), the State amended the section number under which the defendant had been charged from section 11-501(a)(1) of the Vehicle Code to section 11-501(a)(2). Section 11-501(a)(1) stated that a person shall not drive or be in physical control of any vehicle while "[t]he alcohol level of such person's blood or breath is 0.10 or more" and section 11-501(a)(2) stated that a person shall not drive or be in physical control of any vehicle while "[u]nder the influence of

alcohol." *Zajac*, 244 Ill. App. 3d at 43, citing Ill. Rev. Stat. 1987, ch. 95 1/2, par. 11-501(a)(1), (a)(2). This court found that the substitution of subsection (a)(2) for subsection (a)(1) amounted to a substantive, rather than formal, change because "the amendment changed the nature of the evidence necessary to obtain a conviction." *Zajac*, 244 Ill. App. 3d at 44. The two subsections "are clearly distinct statutory offenses which require the State to prove different elements in order to obtain a conviction." *Zajac*, 244 Ill. App. 3d at 44. Furthermore, because the trial proceeded immediately after the amendment, the defendant was not prepared to address the testimony of witnesses on issues raised by the amendment. *Zajac*, 244 Ill. App. 3d at 44.

In *People v. Patterson*, 267 Ill. App. 3d 933 (1994), the indictment originally charged the defendant with possession of more than 15 grams but less than 100 grams of cocaine with intent to deliver, but the State amended the indictment to read more than 400 grams but less than 900 grams of cocaine, which was the original charge presented to the grand jury. On appeal, this court ruled that the trial court erred when it permitted the amendment because "in a drug case, the quantity of a controlled substance possessed by a defendant is an essential element of the charge." *Patterson*, 267 Ill. App. 3d at 939. The case was remanded with instructions to enter judgment on the lesser offense originally charged. *Patterson*, 267 Ill. App. 3d at 939.

Similarly, in *People v. Betts*, 78 Ill. App. 3d 200 (1979), the defendant was originally charged with delivery of dexedrine, a Schedule II controlled substance, which is a narcotic, in violation of section 401(b) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56 1/2, par. 1401). Before trial, the statutory citation in the indictment was changed from section 401(b) to 401(c), and the word "not" was inserted so that the defendant was charged with delivery of a

"substance in Schedule II, which is not a narcotic." (Emphasis omitted.) *Betts*, 78 Ill. App. 3d at 201. However, dexedrine was not a Schedule II controlled substance, and delivery of dexedrine was not a violation of section 401(c). Because both the term "narcotic" and the statutory provision referring to narcotics were used, the court "conclude[d] that it was the grand jury's intention to charge an offense involving a narcotic under par. 1401(b)." *Betts*, 78 Ill. App. 3d at 202. In addition, the offense charged in the original indictment was a Class 2 felony, while the amended indictment alleged a Class 3 felony. *Betts*, 78 Ill. App. 3d at 202. The court concluded that the amendment to the indictment was substantive and reversed the defendant's conviction. *Betts*, 78 Ill. App. 3d at 204. See also *People v. Arbo*, 213 Ill. App. 3d 828, 832 (1991); *People v. Payne*, 194 Ill. App. 3d 238, 247-48 (1990) (an amendment in the information from residential burglary with intent to commit theft to residential burglary with intent to commit a felony changed the mental state of the offense); *People v. Troutt*, 51 Ill. App. 3d 656, 661 (1977).

Defendant argues that the amendments in the instant case were substantive alterations to the nature and elements of the offense charged because "each type of penetration stands on its own as the gravamen of the offense of criminal sexual assault as is, accordingly, not 'surplusage.'"

A person commits criminal sexual assault if he "commits an act of sexual penetration by the use of force or threat of force." 720 ILCS 5/12-13(a)(1) (West 2006). "Sexual penetration" is defined as follows:

> "any contact, however slight, between the sex organ or anus of one person
> by an object, the sex organ, mouth or anus of another person, or any intrusion,
> however slight, of any part of the body of one person *** into the sex organ or

anus of another person, including but not limited to *** anal penetration.

Evidence of emission of semen is not required to prove sexual penetration." 720

ILCS 5/12-12(f) (West 2006).

In *People v. Carter*, 244 Ill. App. 3d 792 (1993), this court rejected the defendant's argument that the specific conduct constituting penetration was an element of criminal sexual assault. "Illinois case law provides that the type of sexual penetration is not an element of the offense, and its inclusion in the indictment is merely surplusage." *Carter*, 244 Ill. App. 3d 803-04. "If the statutory language used describes specific conduct, it is unnecessary for the indictment to specify the exact means by which the conduct was carried out. The State need only prove that a type of sexual penetration occurred beyond a reasonable doubt." *Carter*, 244 Ill. App. 3d 804. *People v. Foley*, 206 Ill. App. 3d 709, 718 (1990), noted that "[e]ach count in the indictment *** charged defendant with sexual penetration, the specific conduct prohibited in the relevant statutes, and it was unnecessary for the indictment to specify the exact means by which the sexual penetration was carried out." See also *People v. Boand*, 362 Ill. App. 3d 106, 130 (2005).

Indeed, amendments changing the manner in which the defendant committed the offense are formal, not substantive. In *People v. Coleman*, 49 Ill. 2d 565 (1971), a murder case, the indictment originally alleged that the defendant stabbed the victim. During the State's case, the trial court allowed the State to amend the indictment by adding the alternative allegation that the defendant asphyxiated the victim with a sheet or blanket. On appeal, the supreme court rejected the defendant's argument that the trial court erred by allowing the amendment, noting that the "gist of the offense with which the defendant was charged in this case was the overt act of

intentionally taking the life of his wife. Of this the defendant was adequately informed by the indictment." *Coleman*, 49 Ill. 2d at 570. The court held that "the allegation of the means used to accomplish her death was not essential but was a formal part of the indictment which could be amended \*\*\*. \*\*\* [I]t is only where the means used are integral parts of the offense that they need be averred, as for example in the crime of assault with a deadly weapon." *Coleman*, 49 Ill. 2d at 571. See also *People v. Nathan*, 282 Ill. App. 3d 608, 611 (1996) (the particular details of the means that the defendant allegedly used do not constitute essential elements of the offense of aggravated battery).

Defendant cites several cases in support of his argument that "on sex charges, the type of penetration stands on its own as the gravamen of the offense of criminal sexual assault." In *People v. Hardeman*, 203 Ill. App. 3d 482, 486 (1990), the court noted that because the defendant was charged with "committ[ing] an act of sexual penetration \*\*\*, to wit: sexual intercourse," his conviction for aggravated criminal sexual assault "must be based on evidence that there was contact, however slight, between the defendant's penis and the victim's vagina." In *People v. Valko*, 201 Ill. App. 3d 462 (1990), the court reversed a count of aggravated criminal sexual assault based on penile penetration when the evidence only established oral sex. Finally, *People v. Garrett*, 281 Ill. App. 3d 535, 545 (1996), the court reversed the defendant's conviction for criminal sexual assault based on anal penetration because the evidence was inconclusive as to whether the defendant intruded into the victim's anus, even slightly. These cases are distinguishable because they analyze the sufficiency of the evidence rather than the sufficiency of an indictment or the propriety of an amendment. Furthermore, the charges in *Valko* and *Garrett*

were based on several separate acts, so testimony regarding one type of penetration, which already satisfied one charge, could not satisfy the State's burden on another charge.

The amendment was not made until after the victim testified. See *Payne*, 194 Ill. App. 3d at 247-48; *Arbo*, 213 Ill. App. 3d at 832. However, it is clear that defendant was "otherwise aware" of the amended charges. *Flores*, 250 Ill. App. 3d at 401. The State's motion to admit other-crimes evidence, which was filed August 5, 2005, well before trial, stated that defendant was charged with sexually assaulting C.C. "in the elected case, 04 CR 38351," after he performed oral sex on her and penetrated her vagina with his penis. It noted that defendant's semen was found in C.C.'s vagina. It sought to admit evidence that four years before this incident, defendant forced G.W. to perform oral, anal, and vaginal sex and threatened her with a knife. In addition, in asserting differences between the crimes, defendant's written response argued that although he "may have a 'propensity' to commit anal rape and to force oral copulation by the victim on defendant, defendant asserts that in this case there was consensual vaginal sex and oral sex performed by defendant on the victim." He continued that the " 'other crimes evidence' *** actually occurred in a [*sic*] entirely different manner than the anticipated *evidence* of vaginal and oral sex by defendant on victim [*sic*] in this case." (Emphasis in original.) In addition, the date of the offense--January 8, 2004--did not change from the original indictment to the amendment. Therefore, the record indicates that defendant was "otherwise aware" of the amended charges. *Flores*, 250 Ill. App. 3d at 401. While defendant argues that the State was conforming the indictment to the victim's testimony, not to the grand jury minutes, the State's position, even before trial, was that defendant sexually assaulted C.C. by penetrating her vagina.

Furthermore, in *Flores*, this court found that an amendment to the indictment to specify the controlled substance that the defendant possessed as cocaine instead of heroin did not cause the defendant a hint of "surprise or prejudice" where he agreed to a stipulation that the substance he sold to the officer was cocaine and he made no request to reopen the proofs when the court ruled that it would allow the amendment. *Flores*, 250 Ill. App. 3d at 401. Here, defendant stipulated at trial that his DNA was found in C.C.'s vagina, even though the original indictment did not allege penis-to-vagina contact, and defense counsel did not ask for a continuance when the trial court allowed the State to amend the indictment. See *Coleman*, 49 Ill. 2d at 570; *Alston*, 302 Ill. App. 3d at 211.

In a motion to file supplemental argument, defendant contends that he was tried "on two different charges during the space of one trial in violation of his guarantee against double jeopardy." Both the Illinois and United States Constitutions provide that no person shall be twice put in jeopardy for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, §10. "The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *People v. Placek*, 184 Ill. 2d 370, 376-77 (1998). We disagree with defendant that he was tried "on two different charges during the space of one trial." Defendant had not been acquitted, convicted, or punished for the charged offense at any time before he was prosecuted in the instant case. Rather, defendant was charged with criminal sexual assault, and the indictment was properly amended to again allege criminal sexual assault.

Defendant further contends in his supplemental filing that the amendments denied him his

right to a speedy trial in violation of the sixth amendment to the United States Constitution (U.S. Const., amend. VI), article I, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, §8), and section 103-5 of the Code of Criminal Procedure of 1963 (Speedy Trial Act) (725 ILCS 5/103-5 (West 2006)). According to defendant, since the charge "submitted by the prosecution in the middle of trial was a new offense[,] none of the time that had gone by since the submission of the original charge would have been chargeable to defendant."

In *People v. Milton*, 309 Ill. App. 3d 863, 866 (1999), we held that where an amendment to the indictment is formal, as it is here, "speedy trial provisions are not implicated." *People v. Williams*, 94 Ill. App. 3d 241 (1981), which defendant relies on, is distinguishable. In that case, the defendants were initially charged with rape and deviate sexual assault. Several months later, and a month before trial, the information was amended to charge the defendants additionally with three counts of aggravated kidnapping, three counts of kidnapping, one count of unlawful restraint, and two counts of aggravated battery. Each defendant was found guilty of all charges, except for one charge of kidnapping. On appeal, the court affirmed the convictions for the originally charged offenses but reversed the other convictions because they were "new and additional" charges brought outside the limits of the Speedy Trial Act. Here, unlike *Williams*, "new and additional" charges were not filed. Rather, the indictment was amended in accordance with section 111-5.

We agree with the trial court's assessment that the State's actions were "sloppy" and "embarrassing." However, we find that the amendments were formal and, accordingly, affirm his conviction.

## B. Evidence of Other Crimes

Defendant argues that evidence of the 17-year-old sexual assault against S.H. was inadmissible. Under the common law, other-crimes evidence is inadmissible if offered only to demonstrate the defendant's propensity to commit the charged crime. *People v. Donoho*, 204 Ill. 2d 159, 169 (2003). Evidence of prior crimes generally is admissible only if it is offered for a specific relevant purpose, such as consciousness of guilt, *modus operandi*, design, motive, absence of mistake, or knowledge. *People v. Banks*, 161 Ill. 2d 119, 137 (1994).

Section 115-7.3 of the Code of Criminal Procedure (725 ILCS 5/115-7.3 (West 2006)) provides an exception to the rule against other-crimes evidence for cases in which the defendant is accused of criminal sexual assault. Under this section, evidence of another criminal sexual assault "may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant" (725 ILCS 5/115-7.3(b) (West 2006)), including a "defendant's propensity to commit sex offenses." *Donoho*, 204 Ill. 2d at 176. When weighing the probative value of the prior offense against undue prejudice to the defendant, the court may consider: (1) the proximity in time to the charged offense; (2) the degree of factual similarity to the charged offense; and (3) other relevant facts and circumstances. 725 ILCS 5/115-7.3(c) (West 2006).

The trial court's decision to admit or deny other-crimes evidence to show the defendant's propensity to commit sex offenses will not be disturbed absent an abuse of discretion. *Donoho*, 204 Ill. 2d at 182. A trial court abuses its discretion when its " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' "

1-06-0792

*People v. Wheeler*, 226 Ill. 2d 92, 133 (2007), quoting *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

First, defendant argues that the transcript served no relevant purpose other than to "overpersuade" the trier of fact. The key to balancing the probative value of other crimes evidence to prove propensity against its prejudicial effect is to avoid admitting evidence that entices a jury to find defendant guilty "*only* because it feels he is a bad person deserving punishment." (Emphasis in original.) *People v. Childress*, 338 Ill. App. 3d 540, 548 (2003). "Looking at the other side of the scale, 'unfair prejudice' 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a different ground from proof specific to the offense charged.' " *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006), quoting *Old Chief v. United States*, 519 U.S. 172, 180, 136 L. Ed. 2d 574, 588, 117 S. Ct. 644, 650 (1997). Other-crimes evidence, when relevant, must not become a focal point of the trial. *Boyd*, 366 Ill. App. 3d at 94.

The trial court found that the other-crimes evidence was admissible to show motive, lack of consent, and propensity. In *People v. Johnson*, 389 Ill. App. 3d 618 (2009), *appeal pending* No. 108514, this court found that the defendant's "no-force" defense at trial "increased the probative value" of the other-crimes evidence, noting that it saw no reason why " 'propensity evidence could not be used to meet the defendant's consent defense' " under section 115-7.3. *Johnson*, 389 Ill. App. 3d at 623-24, quoting *Boyd*, 366 Ill. App. 3d at 93. Furthermore, although the trial court found three uncharged sexual assaults were relevant to establish the defendant's propensity, the State limited the other-crimes evidence at trial to one sexual assault. *Johnson*,

-19-

389 Ill. App. 3d at 624. Similarly, here, the trial court found the sexual assaults against S.H. and G.W. to be relevant and admissible, but the State only presented evidence as to the assault against S.H.

Defendant further contends that the assault against S.H. was "extraordinarily remote" because it occurred 17 years before the assault against C.C. The State responds that defendant's incarceration for almost 6 years for the assault to S.H. mitigates the time gap to 11 years. In *Childress*, this court noted that when the time that the defendant spent in custody for his previous conviction was excluded, the two offenses occurred within a one-year period. *Childress*, 338 Ill. App. 3d at 553. Defendant does not dispute the trial court's conclusion that the 6 years he was incarcerated for the assault on S.H. should be excluded; instead, he argues that even a lapse of 11 years is excessive.

*Donoho* "decline[d] to adopt a bright-line rule about when prior convictions are *per se* too old to be admitted under section 115-7.3. Instead, it is a factor to consider when evaluating its probative value." *Donoho*, 204 Ill. 2d at 183-84. The court noted that the appellate court has affirmed admission of other-crimes evidence more than 20 years old because it was found to be sufficiently credible and probative. *Donoho*, 204 Ill. 2d at 184, citing *People v. Davis*, 260 Ill. App. 3d 176, 192 (1994). The *Donoho* court then held that a 12- to 15-year time gap between offenses, by itself, was insufficient to render the admission of a prior offense an abuse of discretion. *Donoho*, 204 Ill. 2d at 184.

Furthermore, to be admissible under section 115-7.3(c), the other-crimes evidence should have some threshold similarity to the charged crime. *People v. Boand*, 362 Ill. App. 3d 106, 122

(2005). "As factual similarities increase, so does the relevance or probative value." *People v. Wilson*, 214 Ill. 2d 127, 142 (2005).

We find that the facts of the 1987 assault are sufficiently similar to the facts of the assault against C.C. The trial court noted that the sexual assaults against S.H. and C.C. were in the same general area of the city. Furthermore, defendant knew both victims--he was C.C.'s boyfriend's brother and S.H.'s boyfriend's sister's boyfriend--and, using his relationship to gain access to the victims, attacked the women when their boyfriends were out of the house. The victims were African American and 25 years old at the time of the assaults. He penetrated both victims' vaginas with his mouth and his penis, and both assaults occurred, at least in part, where defendant lived. The trial court noted that "these are not isolated incidents, but they actually have some bearing to each other."

Defendant contends that there are "striking dissimilarities" between the two assaults, for example, "no injuries, no weapons, no kidnapping, and no outcries in the current case." Defendant had a single-site brief encounter with a sleeping woman in the instant case, while S.H. was awake, resisting, and taken at knifepoint to another location for an attack that was of a longer duration. Although defendant contends that the similarities between the cases "do not materially surpass what is inherent or common to many sex offenses against female acquaintances generally," our supreme court has held that "[w]here such evidence is not being offered under the *modus operandi* exception, 'mere general areas of similarity will suffice' to support admissibility." *Donoho*, 204 Ill. 2d at 184, quoting *People v. Illgen*, 145 Ill. 2d 353, 373 (1991). The existence of some factual differences between the offenses does not defeat admissibility because no two

independent crimes are identical. *Donoho*, 204 Ill. 2d at 186; *People v. Taylor*, 383 Ill. App. 3d 591, 595 (2008). As this court concluded in *Taylor*, "Even though defendant correctly observes these factual discrepancies, we find that he exaggerates their significance in light of the stated compelling similarities." *Taylor*, 383 Ill. App. 3d at 596.

Defendant cites *People v. Barbour*, 106 Ill. App. 3d 993 (1982). In *Barbour*, the defendant was charged with rape and sexual assault and offered consent as a defense. The State presented evidence of two earlier uncharged rapes to show that they share a *modus operandi*. *Barbour*, 106 Ill. App. 3d at 1000. On appeal, the court found that the State failed to make the " 'strong and persuasive showing of similarity' " required to admit testimony under the *modus operandi* exception. *Barbour*, 106 Ill. App. 3d at 1000, quoting *People v. Tate*, 87 Ill. 2d 134, 141 (1981). The court further held that even if sufficient similarity existed, the evidence was inadmissible on relevancy grounds because the identity of the offender was not at issue, since he admitted to intercourse with all three women. *Barbour*, 106 Ill. App. 3d at 1000.

Defendant also relies on *People v. Stanbridge*, 348 Ill. App. 3d 351 (2004), in support of his argument. In *Stanbridge*, the Fourth District concluded that the fact that a prior conviction was 10 years before the defendant's trial "weighs against admissibility." *Stanbridge*, 348 Ill. App. 3d at 357. It also cited the requirement that a court must consider the similarity between the two offenses and concluded that, "[i]n light of the supreme court's admonition that courts should remain cautious about admitting other-crimes evidence to show propensity, we conclude that the evidence was inadmissible." *Stanbridge*, 348 Ill. App. 3d at 357.

*Stanbridge* and *Barbour* are distinguishable where the other-crimes evidence was admitted

to show motive, lack of consent, and propensity instead of *modus operandi*, absence of mistake, or identity. In addition, the *Stanbridge* court's conclusions lack analysis and seem to misapply *Donoho*. Despite the *Stanbridge* court's holding that a 10-year interval weighs against admissibility, the supreme court specifically ruled that an incident 12 to 15 years before was admissible. *Donoho*, 204 Ill. 2d at 184. The holding in *Stanbridge* as to the factual similarities between the two offenses is equally questionable, as *Donoho* simply cautioned trial courts to "engag[e] in a meaningful assessment of the probative value versus the prejudicial impact of the evidence." *Donoho*, 204 Ill. 2d at 186. The *Stanbridge* court's "use of the supreme court's admonition to trial courts turns the statute on its head." *People v. Walston*, 386 Ill. App. 3d 598, 616-617 (2008).

Therefore, we hold that the trial court did not abuse its discretion in admitting evidence of defendant's sexual assault against S.H.

### C. Other Evidentiary Challenges

Defendant argues that his mother-in-law's testimony that he was "in over his head" and needed "car fare" was irrelevant and prejudicial because it was not connected to the crime charged. He further argues that foundation was lacking for admission of the cell phone message that defendant was "in trouble."

Defendant did not include either of these arguments in his posttrial motion. Furthermore, at trial he did not object to his mother-in-law's testimony, and he moved to strike the testimony regarding the cell phone message on the basis that it was irrelevant, not that it lacked foundation. "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged

errors that could have been raised during the trial." *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Therefore, these issues are procedurally forfeited.

The doctrine of plain error serves as a " 'narrow and limited exception' " to the general rule of procedural default. *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982); 134 Ill. 2d R. 615(a). "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to review an unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Under the first prong, "the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was a plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Herron*, 215 Ill. 2d at 187. Under the second prong, "the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187. "In both instances, the burden of persuasion remains with the defendant." *Herron*, 215 Ill. 2d at 187.

Defendant does not argue in his briefs that this court should apply the plain-error doctrine. Even if he did, however, there can be no plain error when no error occurred at all. *People v. Harris*, 225 Ill. 2d 1, 31 (2007).

Evidence is admissible if it is relevant to an issue in dispute and its prejudicial effect does not outweigh its probative value. *People v. Patterson*, 192 Ill. 2d 93, 114-15 (2000). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the

1-06-0792

determination of the action more probable than it would be without the evidence." *People v. Harvey*, 211 Ill. 2d 368, 392 (2004). The determination of whether evidence is relevant and admissible is a matter within the discretion of the trial court. *People v. Singleton*, 367 Ill. App. 3d 182, 189 (2006). Regarding evidentiary rulings, this court only finds an abuse of discretion where " 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Wheeler*, 226 Ill. 2d 92, 133 (2007), quoting *Caffey*, 205 Ill. 2d at 89.

Defendant, citing *People v. Groleau*, 156 Ill. App. 3d 742 (1987), and *People v. Robinson*, 189 Ill. App. 3d 323 (1989), argues that his mother-in-law's testimony that he said he was "in over his head" and asked for bus fare was "wholly unspecified" and unconnected to the charge. To the contrary, these statements were admissible to show defendant's consciousness of guilt and contemplation of flight. *People v. Evans*, 209 Ill. 2d 194, 222 (2004). See also *People v. Jefferson*, 260 Ill. App. 3d 895, 907 (1994). In *People v. Grathler*, 368 Ill. App. 3d 802, 808 (2006), the court found the defendant's flight from the police, varying statements to the police, and apologies to the victim demonstrated his consciousness of guilt. Similarly, here, defendant made an unsolicited statement to his mother-in-law immediately after the sexual assault that he was "in over his head," and later he asked her for bus fare.

Defendant also argues that a foundation was lacking for admission of an undated phone message that he was "in trouble." Telephone conversations that are relevant to the issues at trial are admissible if a proper foundation is laid. *People v. Caffey*, 205 Ill. 2d 52, 94 (2001). "Testimony as to a telephone conversation between a witness and another person is inadmissible

in the absence of a claim by the witness that he or she knows the other person or can identify the person's voice ***." *Caffey*, 205 Ill. 2d 94-95. In *People v. Goodman*, 347 Ill. App. 3d 278 (2004), the defendant argued that testimony regarding a telephone conversation with her lacked an adequate foundation. This court held that "[a] mere assertion by a telephone caller as to his or her identity, being hearsay, cannot be taken as a sufficient showing of the other person's identity." *Goodman*, 347 Ill. App. 3d at 289, citing *Caffey*, 205 Ill. 2d at 94. "However, even if a witness is unable to identify a caller's voice, the caller's identity can be established through other circumstantial evidence." *Goodman*, 347 Ill. App. 3d at 289, citing *Caffey*, 205 Ill. 2d at 94-95. This court found that there was sufficient circumstantial evidence to establish that an FBI agent talked to the defendant on the phone: he obtained the defendant's phone number from another witness, who identified the defendant and testified that he spoke to her on the phone several times. Furthermore, the woman that he spoke to on the phone identified herself as the defendant. Although the agent did not confirm through the telephone company that the number was listed to the defendant, "we believe that these factors affect only the weight, not the admissibility, of the evidence." *Goodman*, 347 Ill. App. 3d at 289.

Renee Latham knew defendant, since she is defendant's first cousin. She specifically testified that she had previously spoken to him on a house phone, but not a cell phone, and that she recognized defendant's voice on the message he left on her cell phone. She last spoke to him on a house phone on New Year's Eve, but he did not have to identify himself because she knew his voice.

Defendant, citing *People v. Smith*, 321 Ill. App. 3d 669, 675 (2001), contends that the

foundation requirements for admission of a telephone conversation include "voice recognition, date, time, and place of the call." Here, it is problematic that Latham did not testify as to when defendant left the message; although it was left before January 10, 2004, there was no evidence that it was left after the sexual assault, which occurred January 8, 2004. However, defendant only objected to the relevance of Latham's testimony, not the foundation, his cross-examination of her made no mention of the date defendant left the message, and his posttrial motion did not raise this issue. In addition, *Smith* involved the use of a videotape with a sound recording of a conversation, not a phone call or voice message, and the *Smith* court mentions none of the factors listed by defendant, except for "identification of the speakers." *Smith*, 321 Ill. App. 3d at 675.

We find that defendant forfeited his arguments as to the relevance of his mother-in-law's testimony and the foundation for the voice message left on Latham's cell phone. Waiver notwithstanding, we conclude that the trial court did not abuse its discretion.

## D. Sentence

Finally, defendant argues that his sentence was improper because he received insufficient notice of an enhanced sentence and the mandatory life imprisonment statute violates due process and the Illinois constitution's proportionate penalties clause.

### 1. *Notice*

Criminal sexual assault is a Class 1 felony. 720 ILCS 5/12-13(b)(1) (West 2006). A person convicted of criminal sexual assault who has previously been convicted of criminal sexual assault commits a "Class X felony for which the person shall be sentenced to a term of imprisonment of not less than 30 years and not more than 60 years." 720 ILCS 5/12-13(b)(2)

1-06-0792

(West 2006). A person convicted of criminal sexual assault who has previously been convicted of aggravated criminal sexual assault shall be sentenced to a term of natural life imprisonment. 720 ILCS 5/12-13(b)(3) (West 2006). "When a person has any such prior conviction, the *** indictment charging that person shall state such prior conviction so as to give notice of the State's intention to treat the charge as a Class X felony." 720 ILCS 5/12-13(b)(5) (West 2006). Similarly, section 111-3(c) of the Code of Criminal Procedure provides that "[w]hen the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant." 725 ILCS 5/111-3(c) (West 2006). An "enhanced sentence" means a sentence that is increased by a prior conviction from one classification to another higher level classification of offense; it does not include an increase in the sentence applied within the same level of classification of offense. 725 ILCS 5/111-3(c) (West 2006).

The indictment alleged that the State would be seeking an "extended sentence pursuant to 725 ILCS 5/111-3(a)(5)(c) and 720 ILCS 5/12-13(b)(5) in that Kelly Ross has previously been convicted of aggravated criminal sexual assault." At the sentencing hearing, the State sought the term of natural life pursuant to section 12-13(b)(3) on the basis that defendant was previously convicted of aggravated criminal sexual assault. Defendant argues that the indictment gave him insufficient notice that the State would be seeking a natural life sentence.

In *People v. Jameson*, 162 Ill. 2d 282 (1994), the defendants were charged with and convicted of Class 1 and 2 felonies but were sentenced as Class X offenders. *Jameson*, 162 Ill. 2d at 284-85. The defendants argued that the State failed to notify them in the charging instrument

-28-

of its intent to seek a Class X sentence, which they claimed was required under section 111-3(c). The court held that the "legislature enacted section 111-3(c) to ensure that a defendant received notice, before trial, of the *offense* with which he is charged. *** There is no evidence that the legislature intended to require the State to give a defendant pretrial notice of the possible *sentence* *** that he might receive." (Emphasis in original.) *Jameson*, 162 Ill. 2d at 290. The court continued that a defendant "has no corresponding due process right to receive pretrial notice of the sentence he will receive upon conviction." *Jameson*, 162 Ill. 2d at 291. "In fact, the definition of the term 'enhanced sentence' clarifies that the notice requirement in section 111-3(c) does not apply in circumstances where the sentence is increased because of a prior conviction, but the classification of the offense remains the same." *Jameson*, 162 Ill. 2d at 290.

In *People v. Beasley*, 307 Ill. App. 3d 200 (1999), the trial court enhanced the defendant's sentence under section 12-13(b) based on a prior conviction for aggravated criminal sexual assault. *Beasley*, 307 Ill. App. 3d at 210. However, the State failed to give notice of its intention to charge him as a Class X offender, as required by sections 111-3 and 12-13. *Beasley*, 307 Ill. App. 3d at 211. On appeal, the court noted that "[c]learly, subparts (b)(2) and (b)(3) of current section 12-13 elevate the *offense* (not just the sentence) of criminal sexual assault from being a Class 1 felony to being a Class X felony." (Emphasis in original.) *Beasley*, 307 Ill. App. 3d at 211. The court distinguished *Jameson* because in that case "it was the defendant's *sentence* that was enhanced, not his conviction." (Emphasis in original.) *Beasley*, 307 Ill. App. 3d at 211. Because the State failed to give the defendant notice pursuant to sections 12-13 of the Criminal Code and 111-3 of the Code of Criminal Procedure that it intended to elevate the class of the

defendant's offense within the charging instrument, "defendant must be treated as having committed a Class 1 offense, rather than a Class X offense." *Beasley*, 307 Ill. App. 3d at 212.

Here, as in *Beasley*, the offense of which defendant was convicted, and not merely his sentence, was enhanced pursuant to section 12-13, since the Class 1 felony of criminal sexual assault was elevated to a Class X felony based on his prior conviction for aggravated criminal sexual assault. However, unlike the charging instruments in *Beasley*, the indictment in the instant case alleged that the State would be seeking an "extended sentence pursuant to 725 ILCS 5/111-3(a)(5)(c) and 720 ILCS 5/12-13(b)(5) in that Kelly Ross has previously been convicted of aggravated criminal sexual assault."[2] While the indictment did not cite specifically to subsection (b)(3), which relates to a term of natural life imprisonment based on a prior conviction for aggravated criminal sexual assault, it did cite to subsection (b)(5), which requires the State to give notice of its "intention to treat the charge as a Class X felony." 720 ILCS 5/12-13(b)(5) (West 2006). Therefore, defendant had notice that the State intended to charge him with a Class X felony on the basis that he was previously convicted of aggravated criminal sexual assault. Neither *Beasley* nor *Jameson* establishes that any further notice is required.

Accordingly, we conclude that the indictment gave defendant sufficient notice of the State's intention to charge him with a Class X felony based on his prior conviction for aggravated criminal sexual assault. We also reject defendant's argument that he "himself thought that the challenge was to an 'extended term,' which means something else entirely"; during the trial,

---

[2] The State argues that the use of the word "extended" instead of "enhanced" was a typographical error.

defense counsel volunteered that "this is an automatic life case."

## 2. *Due Process*

Defendant next argues that the mandatory life sentence in section 12-13(b)(3), as applied to people ineligible for an extended term, violates due process because it was "irrational, as not reasonably designed to remedy the evil that was targeted by the legislature."

Statutes are presumed to be constitutional, and, thus, the party challenging the statute bears the burden of proving its invalidity. *People v. La Pointe*, 88 Ill. 2d 482, 499 (1981). "A court has a duty to construe a statute in a manner that upholds its constitutionality if it can reasonably be done, and any doubt must be resolved in favor of the statute's validity." *People v. Sanchez*, 344 Ill. App. 3d 74, 80 (2003). A court's primary consideration in construing a statute is to give effect to the legislature's intent by examining not only the language used in the statute, but also the reason for the law and the evil intended to be remedied. *La Pointe*, 88 Ill. 2d at 499. "We generally defer to the legislature in the sentencing arena because the legislature is institutionally better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). "The legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority." *Sharpe*, 216 Ill. 2d at 487. In examining a statute's constitutionality, this court employs a *de novo* standard of review. *People v. Jackson*, 358 Ill. App. 3d 927, 933 (2005).

Our supreme court "has repeatedly recognized that the legislature has the power to

prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences." *People v. Huddleston*, 212 Ill. 2d 107, 129 (2004). However, to "pass muster under the due process clause, a penalty must be reasonably designed to remedy the particular evil that the legislature was targeting." *Sharpe*, 216 Ill. 2d at 531.

The United States Supreme Court has described the risk of recidivism posed by sex offenders as "frightening and high." *McKune v. Lile*, 536 U.S. 24, 34, 153 L. Ed. 2d 47, 57, 122 S. Ct. 2017, 2025 (2002). In *Huddleston*, the court noted that "our legislature has responded again and again to the propensity of sex offenders to repeat their crimes and to increases in the incidence of sexual assault and abuse cases." *Huddleston*, 212 Ill. 2d at 137-38. It is clear that section 12-13(b)(3) was designed to address recidivism among sex offenders by mandating life imprisonment if the defendant is convicted of a criminal sexual assault after being previously convicted of aggravated criminal sexual assault.

Defendant, however, argues that section 12-13(b)(3) is invalid because under section 5-5-3.2(b)(1) of the Unified Code of Corrections, a person convicted of criminal sexual assault may receive an enhanced sentence of up to 30 years' imprisonment if the prior conviction, within the same or greater class of felony, is within 10 years, excluding time in custody. 730 ILCS 5/5-5-3.2, 5-8-2 (West 2006). Defendant contends that the legislature has determined that a crime by a person who repeats a similar offense within a 10-year period is of particular danger of recurrence, so to apply a mandatory life sentence to a person who is "too law-abiding to qualify for a lesser extended term" subverts the statutory scheme. According to defendant, the legislature "did not

1-06-0792

rationally intend to punish a less culpable defendant more severely."

Defendant assumes that section 5-5-3.2 would apply if his previous conviction for aggravated sexual assault had been less than 10 years ago and that, therefore, he would be subject to a maximum discretionary sentence of 30 years' imprisonment. To the contrary, section 12-13(b) plainly applies in cases where the defendant is convicted of a criminal sexual assault after a previous conviction for criminal sexual assault or aggravated criminal sexual assault. 720 ILCS 5/12-13(b) (West 2006). This statute trumps the more general section 5-5-3.2 in cases of criminal sexual assault. "A person who is convicted of the offense of criminal sexual assault *** after having previously been convicted of the offense of aggravated criminal sexual assault *** *shall* be sentenced to a term of natural life imprisonment." (Emphasis added.) 720 ILCS 5/12-13(b)(3) (West 2006).

Defendant also contends that legislative debates support his argument that "the intent of the legislature to allow a natural life sentence to be a matter of discretion reserved for the most culpable." He cites the following debate:

"SENATOR BERMAN: Am I correct, that this bill mandates a life imprisonment for sexual assault?

***

SENATOR RADOGNO: No. That was originally the idea, but in committee it was changed to offer longer sentences than are currently available. So it still does allow some judicial discretion, but the option is for longer sentences." 90th Ill. Gen. Assem., Senate Proceedings, May 20, 1997, at 10 (statements of

-33-

Senators Berman and Radogno).

We disagree with defendant that this exchange shows "disapproval and rejection" of the mandatory life sentence. In *Kunkel v. Walton*, 179 Ill. 2d 519, 536 (1997), the court held that "because the language of the statute is plain and unambiguous, we have no occasion to consider its legislative history." Section 12-13(b)(3) unambiguously provides that a person convicted of criminal sexual assault after having previously been convicted of aggravated criminal sexual assault shall be sentenced to a term of natural life imprisonment (720 ILCS 5/12-13(b)(3) (West 2006)), so there is no need to review its legislative history. See also *People v. Lombardi*, 184 Ill. 2d at 477 (the language of the statute is the best indication of the legislature's intent). The *Kunkel* court went on to warn that "while courts give some consideration by a sponsor of a bill, such statements are not controlling." *Kunkel*, 179 Ill. 2d at 536.

In addition, this exchange can easily be construed as not supporting defendant's position. Senator Berman asked about the sentence for "sexual assault" but did not specify whether the previous conviction was for criminal sexual assault or aggravated criminal sexual assault. It is significant that Senator Radogno also did not qualify her response to whether it applied to a previous conviction for criminal sexual assault or aggravated criminal sexual assault. It is apparent that Senator Radogno was referring to a case of criminal sexual assault after a previous conviction for criminal sexual assault, which calls for a 30- to 60-year term of imprisonment. 720 ILCS 5/12-13(b)(2) (West 2006). This interpretation is further supported by Senator Radogno's statement on March 19, 1997, that Senate Bill 7 "would allow the judge to impose a sentence of thirty to sixty years for the second criminal sexual assault, and that's up from the current six

years. If one of the two offenses is a combination of aggravated or predatory sexual offenses, then the offender is subject to natural life in prison." 90th Ill. Gen. Assem., Senate Proceedings, March 19, 1997, at 57 (statements of Senator Radogno). See also 90th Ill. Gen. Assem., House Proceedings, May 8, 1997, at 17-18 (statements of Representative Turner) ("If the perpetrator has a prior aggravated criminal sexual assault or a prior predatory criminal sexual assault the person will be sentenced to natural life in prison").

We find that section 12-13(b)(3) was reasonably designed to remedy the high rate of recidivism of sex offenders and that it therefore does not violate due process as applied to people ineligible for an extended term.

### 3. *Proportionate Penalties*

The proportionate penalties clause of the Illinois constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, §11. The Illinois Supreme Court has identified three analyses courts use to assess proportionality claims: (1) whether the penalty is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community; (2) whether the described offense, when compared to a similar offense, carries a more severe penalty, although the proscribed conduct creates a less serious threat to the public health and safety; or (3) whether the described offense, when compared to an offense having identical elements, carries a different sentence. *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005).

Defendant, applying the first test, argues that the mandatory life sentence violates the

proportionate penalty clause because it is so disproportionate to the offense as to shock the moral sense of the community. He contends that he was sentenced to a mandatory term of natural life, even though his second offense had no aggravating circumstances, such as bodily injury or the use of a weapon or force.

In *Huddleston*, the supreme court found that section 12-14.1(b)(1.2) (720 ILCS 5/12-14.1(b)(1.2) (West 2002)), which mandated a life sentence when a person was convicted of predatory criminal sexual assault of a child committed against two or more people, did not violate the proportionate penalties clause. In so concluding, the court reviewed the statutes of other jurisdictions, including four other states that required a sentence of mandatory life imprisonment for certain sexual offenses against children. *Huddleston*, 212 Ill. 2d at 140. Such enactments call for longer sentences of imprisonment, "so that the offender's opportunity to reoffend is foreclosed during the period of incarceration." *Huddleston*, 212 Ill. 2d at 138. The court also analyzed the seriousness of the defendant's conduct and his rehabilitative potential. *Huddleston*, 212 Ill. 2d at 142-44.

According to defendant, Illinois law dramatically differs from other states' approaches to sentencing for a second sex offense. He contends that of the 50 states that proscribe sex offenses committed on an adult, only Illinois, Washington, and Georgia require mandatory life without parole for a second sexual offense, and in the 13 other states that allow imprisonment for natural life, the sentence is discretionary and parole is allowable. In light of courts' deference to the legislature in setting criminal penalties (*Sharpe*, 216 Ill. 2d at 487) and the statute's attempt to address the propensity of sex offenders to repeat their crimes (*Huddleston*, 212 Ill. 2d at 137-38),

section 12-13 fits within the general statutory trend described by defendant. Furthermore, while defendant claims that mandating a natural life sentence is disproportionate when he "lived seventeen years without a second sexual offense," he ignores that in addition to the 1987 rape of S.H., he also was found guilty of the 1999 rape of G.W. More important, defendant used a weapon while committing the 1987 assault, both in front of S.H.'s children and while they screamed outside the door.

In *People v. Sanchez*, 344 Ill. App. 3d 74 (2003), this court addressed a proportionate penalties challenge to section 12-14 of the Criminal Code (720 ILCS 5/12-14(a)(2) (West 2000)), the aggravated criminal sexual abuse statute. In *Sanchez*, the defendant was convicted of aggravated criminal sexual assault and, because he had a previous conviction for criminal sexual assault, received a mandatory natural life sentence. On appeal, the defendant argued that his mandatory life sentence violated the proportionate penalties clause because it was so disproportionate to the offense committed as to shock the moral sense of the community. He contended that he was convicted based on bruising the victim, a temporary bodily harm that amounted to a simple battery; had he not caused the bruising, he would not have been convicted of criminal sexual assault, and the court could have imposed a term of 30 to 60 years' imprisonment. 720 ILCS 5/12-13(b)(2) (West 2000). This court rejected the defendant's argument, finding that "the defendant's sentence is not disproportionate to the crime in a way that shocks the moral sense of the community." *Sanchez*, 344 Ill. App. 3d at 85. This court noted, "The mandatory life sentence provision reflects the legislature's decision to treat severely those who engage in repetitive conduct of sexual assault because it recognizes the harm caused to

1-06-0792

victims." *Sanchez*, 344 Ill. App. 3d at 85.

Defendant relies on *People v. Miller*, 202 Ill. 2d 328 (2002), which held that a sentence of natural life imprisonment for a 15-year-old defendant violated the proportionate penalties clause. In *Miller*, the defendant was charged with two counts of first-degree murder based on accountability. The defendant agreed to be a lookout while two other people shot the victims. Our supreme court found that the life sentence was the result of "three converging statutes": the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-4(6)(a) (West 1996)), which required the defendant to be tried as an adult in criminal court; the accountability statute, which barred the court from considering the offender's degree of participation in the crime; and the multiple-murder sentencing statute, which barred the court from considering the age of the offender or his degree of participation in the crime. *Miller*, 202 Ill. 2d at 340. The court held that a mandatory life sentence with no possibility of parole "grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community." *Miller*, 202 Ill. 2d at 341. "This moral sense is particularly true, as in the case before us, where a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole--the same sentence applicable to the actual shooter." *Miller*, 202 Ill. 2d at 341.

As this court noted in *Sanchez*, "[t]his case is wholly distinguishable from *Miller*." *Sanchez*, 344 Ill. App. 3d at 85. Defendant in the instant case, unlike the defendant in *Miller*, is a repeat sex offender. His conduct was not "grossly distorted" by the statute; it fit squarely within

-38-

the conduct prohibited by the criminal sexual assault statute. Defendant was not convicted on a theory of accountability, and he is not a juvenile.

Accordingly, we reject defendant's argument that his sentence was disproportionate to the nature of the offense and to the goal of restoring offenders to useful citizenship.

## III. CONCLUSION

After the trial court allowed the amendments to the indictment, it said, "It's rather embarrassing to say the least." The court went on to call the State's actions "sloppy." We would sum up the State's actions in one word: unprofessional.

For the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

Steele, J., concurs.

1-06-0792

JUSTICE COLEMAN, specially concurring:

I concur with the majority's opinion affirming the conviction and finding that the amendments to the indictment were permissible under the law. I write separately to emphasize a point noted by the majority, as well as by the trial court, that the State's actions with respect to amending the indictment were "sloppy" and "embarrassing."

Although I agree with that assessment of the State's conduct in this case, I would go further. Here, the indictment did not simply contain a single error that was inadvertently overlooked; instead, it appears that the State merely changed the date of the crime and used the same charges that were filed in another case. Presumably, the State did not review the charging instrument to ensure that it accurately reflected the particular case for which it sought the indictment. Not only did the name of the victim refer to another case pending against this defendant, but the particular criminal sexual conduct alleged was also incorrect. Although the law allows for amendments to the indictment such as was done here, it is unacceptable to so casually "cut-and-paste" charges in an indictment. This particular instance of carelessness deserves further comment because the inaccuracies went undiscovered until the victim testified at trial.

Clearly there was substantial evidence against this defendant involving multiple acts of criminal sexual conduct against multiple victims, which the State vigorously and successfully prosecuted. I recognize that keeping the details of each case distinct may be challenging, particularly in cases like this one where there are several cases involving multiple counts with multiple victims that appear similar and are filed against the same defendant. However, it is in such cases that the need for precision and accuracy in each charging instrument becomes all the

-40-

more important in order to avoid imparting any confusion to the grand jury, the trier-of-fact, and the defendant.

Thus, it is not merely "sloppy" and "embarrassing" to have both the name of the victim and the conduct alleged stated incorrectly on the indictment, but it suggests a kind of cavalier attitude that is unbecoming of representatives of the People of the State of Illinois.

1-06-0792

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>KELLY ROSS,<br><br>Defendant-Appellant. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-06-0792<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>October 28, 2009<br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE MURPHY delivered the opinion of the court:<br><br>Steele, J.,       concur [s]<br><br>Coleman, J.       specially concur [s] |
| APPEAL from the Circuit Ct. of Cook County, Criminal Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable    Michael Toomin   , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorney for **Defendant-Appellant:**    Edwin A. Burnette, Public Defender of Cook County<br>Emily Eisner, Assistant Public Defender<br>69 W. Washington, 15th Floor<br>Chicago, IL 60602<br>Phone: (312) 603-0600<br><br>Attorneys for **Plaintiff-Appellee:**    Anita Alvarez, State's Attorney, Cook County<br>James E. Fitzgerald, Alan J. Spellberg, Noah Montague, Asst. State's Attys., Of Counsel<br>Room 309, Richard J. Daley Center<br>Chicago, IL 60602<br>Phone: (312) 603-5496 |